UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| BRANDY LYNN W., <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN J. O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | Case No. 2:23-CV-00416-AKB-REP <br><br> **REPORT AND RECOMMENDATION** |

Pending is Petitioner Brandy Lynn W.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 13) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a fifty-one-year-old woman with a history of back pain, obesity, depression, anxiety, and panic attacks. AR 26-27, 386-387, 395. On October 28, 2020, Petitioner filed an application for social security disability income ("SSDI") as well as an application for supplemental security income ("SSI"). AR 23. Over the next fourteen months, Petitioner failed to return forms about her daily functioning, despite multiple requests to do so. AR 63-64, 79-80. This left the reviewers with insufficient information to process Petitioner's claim, and the claim was denied both initially and on reconsideration. *Id.*

**REPORT AND RECOMMENDATION - 1**

In December 2021, Petitioner submitted her function report. AR 419-426. Petitioner also requested a hearing in front of an Administrative Law Judge ("ALJ"). AR 23. At Petitioner's entreaty, the ALJ ordered that a psychological examination occur before the hearing date. AR 259, 449, 624. The ALJ also scheduled a medical expert to testify at the hearing. AR 261. Unfortunately, car trouble prevented Petitioner from attending the psychological examination. AR 58, 624. Not knowing that Petitioner had rescheduled the examination, the ALJ proceeded with the hearing. AR 57-58. Petitioner appeared. At that point, the ALJ learned that Petitioner had reset the psychological examination for a date several weeks after the hearing. The ALJ explained that this did not work and postponed the hearing. AR 48, 58-59.

On November 22, 2022, Petitioner underwent the psychological examination. AR 628. The ALJ reset the hearing for March 9, 2023. AR 276. The ALJ, however, did not recall the medical expert to testify at the new hearing date. AR 279. On March 9, 2023, the hearing occurred. Petitioner's counsel appeared, but Petitioner did not. AR 48-49.

During the time scheduled for the hearing, Petitioner's counsel and the ALJ's staff both tried to call Petitioner. Neither received an answer. AR 48-49, 460. The ALJ's staff also called the individual who was supposed to give Petitioner a ride to her attorney's office for the hearing. This person said that she waited for an hour outside Petitioner's trailer, but Petitioner never came out. *Id.* Because Petitioner's counsel was present, the ALJ took testimony from the vocational expert. AR 48. The ALJ indicated that she would send Petitioner a notice to show cause asking Petitioner to explain her absence. AR 53.

On March 27, 2023, Petitioner returned a hand-written response to the ALJ's notice to show cause stating she was "incapacitated" and "unable to comprehend" what she was doing the day of the hearing. AR 304. Petitioner's counsel also wrote a letter in support of the notice to

**REPORT AND RECOMMENDATION - 2**

show cause explaining that Petitioner had a "panic episode" the day of the hearing and refused to participate. AR 305. The ALJ found that Petitioner had not established "good cause" for her nonappearance, and the ALJ declined to hold another hearing. AR 23-24.

On May 3, 2023, the ALJ issued a decision that was unfavorable to Petitioner. AR 23-39. Petitioner appealed this decision to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1-3.

Having exhausted her administrative remedies, Petitioner filed this case. Petitioner raises three points of error. First, Petitioner contends that the due process clause required the ALJ to call a mental health expert to testify. Pt.'s Br. at 9-11 (Dkt. 13). Second, Petitioner maintains that the ALJ was biased. *Id.* at 12-13. Finally, Petitioner argues that the ALJ did not provide sufficient reasons for rejecting the opinions of the consulting psychologist, Dr. Lynette Schultz.[1] *Id.* at 13.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the

---

[1] Petitioner also alleges that the "ALJ's findings [were] not supported by the record." *Id.* at 13-14. This section of Petitioner's brief is too generic to enable review. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (on appeal, the court only reviews "issues which are argued specifically and distinctly in a party's opening brief;" it does not "manufacture arguments for an appellant"); *see also Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020) (unpublished) (a summary assertion of error is insufficient to preserve an issue for review).

**REPORT AND RECOMMENDATION - 3**

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**REPORT AND RECOMMENDATION - 4**

## **THE SEQUENTIAL PROCESS**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable

**REPORT AND RECOMMENDATION - 5**

impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

**REPORT AND RECOMMENDATION - 6**

Cir. 2014). If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: mild-to-moderate degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, obesity, major depressive disorder, and anxiety disorder with panic disorder. AR 26-27. The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that she cannot perform assembly line or similarly fast paced work and is limited to simple, routine, and repetitive tasks. AR 30. Based on the testimony of a vocational expert (a "VE"), the ALJ concluded that these limitations would prevent Petitioner from returning to her past work as an automobile mechanic, parts clerk, commercial cleaner, or automobile repair service estimator. AR 36. The ALJ found, however, that Petitioner's limitations would not prevent her from performing an alternative range of unskilled light jobs, including working as an usher, officer helper, or marker. AR 37. The ALJ, therefore, found that Petitioner was not disabled. AR 38.

## DISCUSSION

I.     The Adequacy of the Record

The first issue Petitioner raises on appeal is a due process challenge asserting that the ALJ had a duty to schedule live testimony from a medical expert at the disability hearing. Petitioner is correct that applicants for social security disability benefits enjoy procedural due process protections. *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001). Petitioner's framing of her due process challenge, however, misses the mark.

**REPORT AND RECOMMENDATION - 7**

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Social Security statutes and regulations generally satisfy this constitutional baseline. Under the United States Code and the applicable regulations, a claimant has the right to appear at a hearing before an ALJ and the right to present evidence, including testimony, before the claimant's claim for disability benefits is denied. *See* 42 U.S.C. 405(b)(1) and 20 C.F.R.§§ 404.944, 404.950(a). Petitioner does not deny that she was afforded adequate notice of the disability hearing, under these regulations, and or that she was given a meaningful opportunity to attend and be heard.

Instead, Petitioner challenges the adequacy of the ALJ's development of the record. While such a challenge has its roots in due process,[2] the Ninth Circuit has developed a specialized body of case law for evaluating such claims. This body of law (i) recognizes that ALJs bear a duty to "fully and fairly develop the record and . . . assure that the claimant's interests are considered" and (ii) contains importance guidance about the contours of this duty. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Most notably, the Ninth Circuit has held that an ALJ's duty to solicit additional medical evidence is only triggered if the evidence is "ambiguous" or if the ALJ has found "the record inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001).

---

[2] *See Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (Brennan, J., concurring) (explaining that an ALJ's "duty of inquiry derives from claimants' basic statutory and constitutional right to due process in the adjudication of their claims"); *see also Richardson v. Perales*, 402 U.S. 389, 390, 402 (1971) (using a procedural due process rubric to determine whether written reports that were contrary to the live testimony could constitute "substantial evidence" of non-disability).

**REPORT AND RECOMMENDATION - 8**

Petitioner, unfortunately, does not engage with this case law. Rather than explaining why the record regarding her mental health should be considered "ambiguous" or "inadequate," Petitioner insists that the ALJ's own conduct and the Social Security Administration's policies required the use of a medical expert. Pt.'s Br. at 9-11 (Dkt. 13) and Pt.'s Reply at 3 (Dkt. 16). Petitioner's arguments are misplaced.

First, Petitioner argues that her due process rights were violated because the ALJ "stated on the record that she needed the testimony of a medical expert." Pt.'s Reply at 3 (Dkt. 16). An "ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence" will trigger the ALJ's duty to "conduct an appropriate inquiry." *Tonapetyan*, 242 F.3d at 1150. In this case, however, the ALJ never made such a finding. At the first disability hearing, the ALJ explained that she was continuing the hearing because she "need[ed]" the report from *the upcoming psychological examination* before the hearing could occur. AR 58-59. The reason for this decision was simple: the ALJ wanted to have all the information before questioning the witnesses. *See* AR 58-59 ("the entire point of having a [consultative examination] was to have it done before the hearing . . . we need that report before the doctor can testify, the medical expert can testify, and I need that information before I know what to ask your client"). This was a sensible procedural decision, not a concession that testimony from *two* mental health experts – both a consulting examiner and a testifying reviewer – was required to make a fair decision. *See* 20 C.F.R.§ 404.944 (permitting an ALJ to "stop the hearing temporarily and continue it at a later date if he or she finds that there is material evidence missing at the hearing").

**REPORT AND RECOMMENDATION - 9**

Second, Petitioner suggests that Dr. Schultz's report did not provide a sufficient reason for the ALJ to cancel the testimony of the medical expert between the two hearing dates.[3] Pt.'s Reply at 3 (Dkt. 16). The undersigned disagrees. While the ALJ declined to adopt Dr. Schultz's judgments about the degree of Petitioner's limitations, Dr. Schultz's report is not confined to its conclusions. The report contains a wealth of information about Petitioner's mental health, including a summary of Petitioner's mental health history, information about Petitioner's current treatment regime, documentation of Petitioner's symptoms, cognitive test results, and observations about Petitioner's appearance, affect, cognitive abilities, memory, judgment, and attention. AR 628-632.[4] Petitioner has not identified any cases finding a social security record "inadequate" in the face of such evidence. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (the record was adequately developed where the ALJ had years of mental health records and "multiple opinions from non-examining psychiatrists to inform [the] decision").

Finally, Petitioner asserts that the Commissioner's Hearings, Appeals, and Litigation Manual ("HALLEX") required the use of a medical expert. Even if Petitioner has correctly interpreted HALLEX – and the undersigned is not persuaded she has[5] – the directions contained in HALLEX do not carry the force of constitutional law. *Moore v. Apfel*, 216 F.3d 864, 868 (9th

---

[3] In her reply brief, Petitioner complains that she was unfairly surprised by the ALJ's decision to cancel the medical expert. Pt.'s Reply at 3-4 (Dkt. 16). This complaint falls flat. The ALJ mailed Petitioner a Notice of Hearing on December 19, 2022, which indicated that the ALJ no longer intended to call a medical expert. AR 276, 279. Petitioner did not object to this change, either before the disability hearing or at the hearing, once it was clear no expert testimony would be received.

[4] The ALJ cited some of this information to support and explain the RFC. AR 33-34.

[5] Petitioner asserts, for instance, that Dr. Schultz determined that she satisfies the paragraph B criteria for having a "listing level" mental illness. Pt.'s Br. at 8-9, 11 (Dkt. 13). This is incorrect. The paragraph B criteria require a claimant to show extreme limitation of one or a marked limitation of two of four domains: (i) understanding, remembering, or applying

**REPORT AND RECOMMENDATION - 10**

Cir. 2000) ("HALLEX is strictly an internal guidance tool"); *see also Lockwood v. Comm'r SSA*, 616 F.3d 1068, 1072 (9th Cir. 2010) (HALLEX "does not impose judicially enforceable duties on either the ALJ or this court"). To succeed in a due process claim attacking the ALJ's development of the record, Petitioner must show that the evidence was "ambiguous" or "inadequate." *Mayes*, 276 F.3d at 459-460; *see also Patton v. O'Malley*, No. 23-35073, 2024 WL 575160, at *1 (9th Cir. Feb. 13, 2024) (unpublished) (where the ALJ did not have a duty to develop the record, the ALJ did not violate due process by not calling a medical expert) and *Andrews v. Kijakazi*, No. 22-35529, 2023 WL 4585976, at *2 (9th Cir. July 18, 2023) (unpublished) (same). Petitioner has not made this showing.

This is not surprising. By configuring her challenges as procedural issues, Petitioner is attempting to fit a square peg into a round hole. As best the undersigned can tell, Petitioner's primary grievance with the ALJ's decision is that the ALJ rejected Dr. Schultz's opinion – the only medical opinion in the record – without consulting a competing medical expert. Pt.'s Br. at 9-11 (Dkt. 13). It is well-settled, however, that an ALJ may reject uncontroverted medical opinions. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (even where it is uncontradicted, a physician's opinion is not "necessarily conclusive"). If an ALJ's rejection of an uncontroverted medical opinion is unreasonable, overly speculative, or unsupported by the

---

information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing oneself. *See* 20 C.F.R., Pt. 404, Appendix 1 of Supt. P, Listings 12.04, 12.06 and 12.15. The form Dr. Schultz completed, however, only asked her to rank Petitioner's functioning in select subsets of these domains. AR 634-635. As a result, Dr. Schutlz' ratings are not comprehensive. To the extent they can be mapped onto the paragraph B criteria, they suggest that Petitioner has moderate limitations understanding, remembering, or applying information, marked limitations interacting with others, and documented, but unrated, limitations in the final two domains. AR 634-635. This is not *conclusive* proof of a presumptively disabling mental health illness.

**REPORT AND RECOMMENDATION - 11**

evidence, the appropriate framework for contesting this decision is a *substantive* challenge to the ALJ's credibility findings. *See, e.g.*, *Day v. Weinberger*, 522 F.2d 1154, 1157 (9th Cir. 1975) (an ALJ's independent research mission did not justify rejecting the opinions of a treating provider). Petitioner raises such a challenge, here, but spends less than half a page developing it. Pt.'s Br. at 13 (Dkt. 13). This is regrettable. Petitioner would have been better served by focusing on the merits of the ALJ's decision rather than trying to shoehorn her disagreements into a due process claim.

The ALJ provided Petitioner with a comprehensive psychological examination, timely notice of the disability hearing, and a meaningful opportunity to be heard. Due process did not require anything further. *See Richardson*, 402 U.S. at 390, 400, 410 (due process concerns "integrity and fundamental fairness;" it does not impose "strict" evidentiary formalities on social security hearings).

II.     The ALJ's Alleged Bias

Petitioner's second challenge on appeal is that the ALJ was unfairly prejudiced against her. Pt.'s Br. at 12-13 (Dkt. 13). The presumption, however, is that hearing officers are unbiased. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-15 (9th Cir. 2005). To prevail on a claim that an ALJ failed to impartially assess the evidence, a petitioner must show that the ALJ's conduct, examined in the context of the whole case, was "so extreme as to display clear inability to render fair judgment." *Id.*

The record does not support such a finding. Petitioner rests her assertion of impartiality on three facts: (i) the ALJ's annoyance at Petitioner for missing the first date for the psychological examination, (ii) the ALJ's refusal to reschedule the disability hearing after

Petitioner allegedly had a panic attack and failed to appear,[6] and (iii) the ALJ's decision to cancel the medical expert testimony after receiving Dr. Schultz's report. Pt.'s Br. at 12-13 (Dkt. 13). "In the absence of any evidence of some extrajudicial source of bias or partiality, [however,] neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are critical or disapproving of, or even hostile to, counsel, the parties, or their cases." *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008).

Here, the irritation the ALJ expressed at Petitioner missing the psychological examination was relatively modest; the ALJ made one, isolated comment saying she was "pretty upset" that Petitioner had failed to attend the examination. AR 58. While this remark was not the most considerate, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display do not establish bias." *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

As for the ALJ's refusal to reschedule the hearing and the ALJ's cancelation of the medical expert, these were adverse procedural rulings. Petitioner may disagree with these decisions, but that is not a basis for a violation of due process. *See Larson*, 515 F.3d at 1067 (mere dissatisfaction or disagreement with an adjudicator's decision is generally insufficient to

---

[6] The reasons Petitioner's counsel has proffered for Petitioner's failure to appear are sympathetic. In the ALJ's shoes, the undersigned may have found good cause to reschedule the disability hearing. Petitioner, however, has not raised a direct challenge to the ALJ's good cause findings. The undersigned will not raise this issue on Petitioner's behalf. *See Greenwood*, 28 F.3d at 977; *see also Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) ("In our adversary system, it is generally up to the parties to decide, within the parameters of the applicable procedural rules, what particular relief they wish to seek, what type of motion they wish to present to obtain that relief, and which arguments they wish to make in support.").

**REPORT AND RECOMMENDATION - 13**

show bias); *see also Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Petitioner has not shown that the ALJ engaged in the kind of "extreme" behavior or deep-seated antagonism that would justify a finding that the ALJ was unable to render a fair decision.

III.     The ALJ's Rejection of Dr. Schultz's Findings

Petitioner's final argument on appeal is that the ALJ failed to give adequate[7] reasons for refusing to accept Dr. Schultz's findings. Pt.'s Br. at 13 (Dkt. 13). As Respondent points out, this assertion of error is largely undeveloped.

The ALJ's decision contains several paragraphs discussing and analyzing Dr. Schutlz's observations and findings. AR 33-36. Relevant here, the ALJ explained that Dr. Schutlz's report was supported, but that her opinions were unpersuasive because they were (i) inconsistent with the medical record and (ii) based heavily on her one-time examination of the claimant. AR 35. The ALJ cited a list of Petitioner's medical records to support this conclusion. *Id.* According to the ALJ, these records showed that Petitioner could perform simple, routine work. *Id.* This analysis is sufficient on its face. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion. . . will be."); *see also Ghanim v.*

---

[7] Petitioner argues that the ALJ was required to give "specific, clear and convincing reasons" for discounting Dr. Schultz's findings. Pt.'s Br. at 13 (Dkt. 13). Because this case was filed after March 17, 2017, however, the revised regulations governing the evaluation of medical evidence apply. 20 C.F.R. § 404.1520c. The Ninth Circuit has held that these regulations supersede prior Ninth Circuit precedent requiring heightened reasons for an ALJ to reject the opinions of a treating or examining physician. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The correct standard of review, under *Woods*, is the substantial evidence standard. *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

**REPORT AND RECOMMENDATION - 14**

*Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Inconsistency between the opinions of a treating physician and the notes of other medical providers can be a specific and legitimate reason for an ALJ to discredit the opinions of the treating physician").

If the records the ALJ cited did not rationally support her conclusions, that would, of course, form a basis for remand. But Petitioner does not raise this issue for review. Petitioner does not discuss any of the records cited by the ALJ. Nor does Petitioner provide her own analysis of the medical record. Finally, Petitioner makes no attempt to address why the ALJ's reasoning was untenable. In short, Petitioner does not challenge the ALJ's finding that Dr. Schultz's opinions were inconsistent with the medical record.

The undersigned declines to construct this fact-intensive challenge on Petitioner's behalf. To preserve a challenge to an ALJ's finding for review, it is Petitioner's responsibility to develop that challenge with citations to the law and the record. *See Carmickle v. Comm'r of Social Sec. Admin*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (refusing to address an ALJ's finding where the Petitioner "failed to argue [the] issue with any specificity in his briefing."); *see also Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020) (unpublished) (where the petitioner "summarily" concluded that various medical findings supported the petitioner's preferred medical opinion evidence, this broad assertion was insufficient to preserve the issue for review). Because Petitioner has not met that burden, her challenge to the ALJ's treatment of Dr. Schultz's opinion cannot succeed.

## RECOMMENDATION

**REPORT AND RECOMMENDATION - 15**

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be **AFFIRMED**, that Petitioner's Petition for Review (Dkt. 1) be **DENIED**, and this action be **DISMISSED** in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: June 10, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 16**